UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **AUDREY SNYDER** <br> 378 Wyndham Drive <br> Maineville, OH 45039 | : <br> : <br> : <br> : | Case No. |
| Plaintiff, | : <br> : | Judge: |
| -vs- | : <br> : | |
| **BRUNS, CONNELL, VOLLMAR** <br> **& ARMSTRONG, LLC** <br> 40 N. Main St., Suite 2010 <br> Dayton, OH 45423 | : <br> : <br> : <br> : <br> : | |
| and | : <br> : | |
| **ADAM ARMSTRONG, Esq.** <br> 40 N. Main St., Suite 2010 <br> Dayton, OH 45423 | : <br> : <br> : <br> : | |
| Defendants. | : <br> : | |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Audrey Snyder, individually and on behalf of the proposed class identified below, states the following for her claims against Defendants Bruns, Connell, Vollmar & Armstrong, LLC and Adam Armstrong, Esq.:

### PARTIES

1. Plaintiff Audrey Snyder is a resident of Warren County, Ohio.

2. Defendant Bruns, Connell, Vollmar & Armstrong, LLC, is a limited liability company registered with the Secretary of State of Ohio, with a principal place of business in Dayton, Ohio. Upon information and belief, all of Defendant's members are residents and citizens of Ohio.

3. Defendant Adam Armstrong is an attorney licensed to practice in the State of Ohio and is a partner with Defendant Bruns, Connell, Vollmar & Armstrong, LLC. Upon information and belief, Defendant Adam Armstrong is a resident and citizen of Montgomery County, Ohio.

4. Defendants are "debt collectors" as defined under 15 U.S.C.S. § 1692a.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this case is brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq.

6. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they are so related to Plaintiff's federal law claims that they form part of the same case or controversy.

7. This Court has personal jurisdiction over Defendants by virtue of their presence, residence, incorporation, operation, actions, and regular and systematic contacts in Ohio.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because this District is where a substantial part of the events or omissions giving rise to the claims occurred and Defendants are subject to personal jurisdiction in this venue.

## FACTUAL BACKGROUND

### *Defendants' Lawsuit Against Ms. Snyder*

9. Betty Gilpin is Plaintiff Snyder's mother.

10. Ms. Gilpin sought residence with Liberty Nursing Center of Colerain ("Liberty") on March 20, 2019.

11. To become a resident of Liberty Nursing Center, Ms. Gilpin was required to sign an Admission Agreement.

12. The Admission Agreement contained an attorney fee-shifting provision that purported to be applicable to collections actions pursuant to the Agreement.

13. Ms. Gilpin signed the Admission Agreement.

14. Ms. Snyder was present when her mother signed Liberty's Admission Agreement.

15. However, Ms. Snyder did not sign the Admission Agreement.

16. Ms. Snyder did not sign the Admission Agreement on Ms. Gilpin's behalf.

17. Ms. Snyder did not sign the Agreement to personally guarantee any payments or debts to Liberty.

18. Indeed, Ms. Gilpin handles her own financial affairs, and Plaintiff Snyder is not Ms. Gilpin's power of attorney.

19. After becoming a resident at Liberty, Medicaid refused to cover the cost of Ms. Gilpin's stay.

20. As a result, Liberty claimed that Ms. Gilpin owed it a debt in excess of $50,000.

21. Liberty retained Defendants to serve as debt collectors and attempt to recover the debt it alleged was owed for Ms. Gilpin's stay at Liberty.

22. On November 4, 2019, Defendants filed a collections suit on behalf of Liberty in the Hamilton County Court of Common Pleas. (See Exhibit 1). The Complaint contained an FDCPA notice. (Id.)

23. Inexplicably, the Complaint named *Ms. Snyder* as a defendant, in addition to Ms. Gilpin.

24. One of the purported bases for relief against Ms. Snyder was that she was unjustly enriched by her mother's stay at Liberty, because "[a]s a result of Gilpin's admission to Liberty, Snyder was *relieved of the obligation to care for her mother*." (emphasis added).

25. In addition to alleging Ms. Snyder was responsible for Ms. Gilpin's debt, Defendants Bruns, Connell, Vollmar & Armstrong, LLC and Adam Armstrong also alleged that Ms. Snyder was liable for Defendants' attorneys' fees associated with the debt collection action.

26. Ms. Snyder was forced to retain counsel to defend herself and incurred thousands of dollars in attorneys' fees. Following her deposition, Defendants voluntarily dismissed their claims against Ms. Snyder without prejudice.

27. While Defendants' specious claim that Ms. Snyder was responsible for Ms. Gilpin's debt was certainly objectionable and baseless, that is not the basis for this suit. Rather, Ms. Snyder's claims against Defendants are premised upon Defendants' unconscionable and deceptive threat that it could collect attorneys' fees from her in the debt collection suit.

### *Defendants' Unconscionable and Deceptive Acts*

28. Defendants' attempt to collect its attorneys' fees from Ms. Snyder expressly violates Ohio law and has been deemed an unconscionable and deceptive act.

29. As is clear in Ohio's common law, which has been reinforced by the Ohio Revised Code, "attorney fees are not recoverable in connection with any claim involving consumer debt." *Gionis v. Javitch, Block & Rathbone,* 405 F. Supp. 2d 856 (S.D. Ohio 2005)(citing R.C. § 1301.21 (renumbered as R.C. § 1319.02)); *see Wise v. Zwicker & Assocs., P.C.,* 780 F.3d 710, 713-714 (6th Cir. 2015)(recognizing that if Ohio law applied to a consumer debt contract, the fee shifting provision in that contract would be unenforceable).

30. Accordingly, in asserting that they were entitled to collect attorneys' fees from Ms. Snyder, Defendants "'threatened to take an []action that cannot legally be taken,' which also amounts to 'false representation or deceptive means to collect or attempt to collect a[] debt[.]'" *Gionis v. Javitch, Block & Rathbone, LLP,* 238 Fed. Appx. 24, 30 (6th Cir. 2007) (quoting 15 USC § 1692e(5) and 1692e(10)).

31. Such conduct has been declared unconscionable and deceptive by Ohio courts. *See e.g., Bennett v. Tri-State Collection Serv.,* No. 940002, 1976 WL 38806 (Ohio Ct. Comm. Pl. Aug. 24, 1976).

32. Defendants are seasoned debt collectors that knew better.

33. Indeed, Defendant Bruns, Connell, Vollmar & Armstrong, LLC is a law firm that holds itself out as having expertise in the area of "Collections/Profit Recovery." According to Defendant Bruns, Connell, Vollmar & Armstrong, LLC's website, Defendant asserts that it has "years of experience advising businesses, in multiple industries, on accounts receivable best practices to help you reduce overdue and delinquent receivables. We also have years of experience evaluating the collectability of receivables so you don't throw good money at bad. If need be, we will pursue your delinquent account in a court of law, ***and have done so hundreds of times***." (emphasis added).

34. According to the Ohio Secretary of State's website, Defendant Bruns, Connell, Vollmar & Armstrong, LLC was formed in August 2016. Therefore, in light of Defendant's representations as to the amount of collections cases it has filed for clients, Defendant averages more than 25 filed collections lawsuits per year.

35. According to its website, Defendant Adam Armstrong is a partner with Defendant Bruns, Connell, Vollmar & Armstrong, LLC.

36. Defendant Adam Armstrong regularly collects debts as part of his practice.

37. Defendant Adam Armstrong's specific page on Defendant Bruns, Connell, Vollmar & Armstrong, LLC's website lists "Collection/Profit Recovery" as one of his areas of practice.

38. In fact, he is the *only* attorney at Bruns, Connell, Vollmar & Armstrong, LLC that has "Collection/Profit Recovery" listed as an area of practice.

39. Mr. Armstrong's biography on the website specifically notes that he "counsels and advises health care professionals and entities on compliance with HIPAA, Medicare/Medicaid rules and regulations and profit recovery."

40. It is presently unknown how many clients Defendants serve by pursuing collections efforts on their behalf. The collections suit giving rise to this action however, was filed by Defendants on behalf of Liberty Nursing Center of Colerain. A search of the Clerk of Court's website demonstrates that over the last 24 months, every collections suit for Liberty Nursing Center of Colerain in Hamilton County (approximately 9) was filed by Mr. Armstrong and Bruns, Connell, Vollmar & Armstrong, LLC.

41. From the documents available on the Clerk of Court's website, it appears that Defendants sought attorneys' fees in these collections lawsuits.

42. Accordingly, it appears that Defendants regularly engage in the deceptive and unconscionable act or practice of seeking attorney fees when pursuing collections efforts on behalf of their clients.

## CLASS ACTION ALLEGATIONS

43. Plaintiff alleges and incorporates by reference the allegations contained in the preceding paragraphs and further states as follows.

44. Plaintiff brings this action individually and as a class action pursuant to Fed. R. Civ. P. 23 to remedy violations of Federal law and Ohio state law.

45. Plaintiff brings this action on behalf of all other similarly situated persons against whom Defendants have pursued collections efforts involving consumer debts and sought to recover or threatened to recover attorneys' fees for Defendants' collections efforts.

46. Plaintiff is a member of the class she seeks to represent.

47. The members of the class are so numerous that joinder of all members of the class is impractical. It is presently unknown how many clients Defendants represent in attempting to collect debts or who those clients are. Nonetheless, it is known that Defendants represent Liberty Nursing Center. For this one client, in Hamilton County alone, Defendants filed approximately 9 collections suits in the last 24 months and sought attorneys' fees in most if not all of those suits. Furthermore, Defendants' website represents that they have filed hundreds of collections suits on behalf of their clients and it appears to be Defendants practice to seek attorneys' fees as part of their debt collection services/filings.

48. Plaintiff's claims are typical of the claims of the other members of the Class.

49. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests which conflict with those of the other members of the class. Furthermore, Plaintiff has retained Counsel well experienced in class action litigation, thus making Plaintiff an adequate class representative.

50. Common questions of both law and fact exist as to all members of the Class. These common questions predominate over any questions affecting members of the class. For example, common questions of law and fact include, but are not limited to:

  a. Whether Defendants are "debt collectors" as defined by the FDCPA;
  b. Whether Defendants are "suppliers" as defined by the Ohio Consumer Sales Practices Act;
  c. How many collections lawsuits Defendants have filed in which they sought attorneys' fees;
  d. How many non-filed collections efforts Defendants have made in which they represented to debtors that Defendants could pursue attorneys' fees;

  e. The amount of attorneys' fees members of the class paid Defendants in association with Defendants' collection efforts.

  f. The proper measure of damages sustained by the Class.

51. Class action treatment is superior to other alternatives for the fair and efficient adjudication of the controversy alleged herein. Such common treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of effort and expense that numerous individual actions would entail.

52. Furthermore, the amounts at stake for many Class Members, may not enable them to maintain separate lawsuits against Defendants. Utilizing the class action mechanism allows these Class Members to have their day in court.

53. No difficulties are likely to be encountered by the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of the controversy.

54. The identities of the Class Members are easily identifiable from Defendants' files and publicly filed documents.

55. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Defendants.

56. Without a class action, Defendants will likely retain the benefits of their wrongdoing and continue a course of action which will only harm more individuals.

<strong><u>FIRST CAUSE OF ACTION</u></strong><br><strong>VIOLATION OF THE</strong><br><strong>FAIR DEBT COLLECTION PRACTICES ACT (15 USC § 1692 et seq.)</strong>

57. Plaintiff Snyder restates and incorporates all previous paragraphs.

58. Defendant Bruns, Connell, Vollmar & Armstrong, LLC is a "debt collector" that is governed by the Fair Debt Collections Practices Act, because, as set forth above, it regularly engages in consumer-debt collection activity.

59. Defendant Armstrong is a "debt collector" governed by the Fair Debt Collections Practices Act, because, as set forth above, he regularly engages in consumer-debt collection activity.

60. The FDCPA makes it unlawful for debt collectors to use false, abusive, unfair, or deceptive practices when they collect debts.

61. The FDCPA makes it unlawful for debt collectors to falsely represent the character, amount, or legal status of any debt.

62. The FDCPA makes it unlawful for debt collectors to falsely represent services rendered or compensation which may be lawfully received in connection with the collection of a debt.

63. The FDCPA makes it unlawful for debt collectors to threaten to take action that cannot be legally taken.

64. The FDCPA makes it unlawful for debt collectors to attempt to collect an amount in excess of what is lawfully owed.

65. Under Ohio law, attorneys' fees are not recoverable in connection with any claim involving consumer debt.

66. Nonetheless, in attempting to collect consumer debts, Defendants represented to Plaintiff and the Class in legal filings and, upon information and belief, other correspondence that they would be responsible for Defendants' attorneys' fees in pursuing debt collection efforts against them.

67. In threatening that Plaintiff and the Class would be responsible for Defendants' attorneys fees – which were not recoverable under Ohio law – Defendants violated the FDCPA.

68. As a direct and proximate result of Defendants' violation of the FDCPA, Plaintiff and the members of the class have suffered harm, including but not limited to statutory damages, damages associated with any amounts paid to Defendants' for their attorneys' fees, and emotional distress.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE
## OHIO CONSUMER SALES PRACTICES ACT (O.R.C. § 1345 et seq.)

69. Plaintiff Snyder restates and incorporates all previous paragraphs.

70. Defendants are suppliers under the Ohio Consumer Sales Practices Act ("CSPA"), R.C. § 1345.

71. Under the CSPA, a supplier cannot act unconscionably and deceptively.

72. Specifically, under the CSPA it is a deceptive and unconscionable act or practice for a supplier engaged in the collection of claims of debt arising from consumer transactions knowingly to make a misstatement of fact that is designed to exaggerate the remedies or power of the creditor or collector over the consumer, or the consequences to the consumer of non-payment of the claim or knowingly to misstate the law or the consumer's obligations to the creditor.

73. Under Ohio law, attorney fees are not recoverable in connection with any claim involving consumer debt.

74. Nonetheless, in attempting to collect consumer debts, Defendants represented to Plaintiff and the Class in legal filings and, upon information and belief, other correspondence that they would be responsible for Defendants' attorneys' fees in pursuing debt collection efforts against them.

75. In threatening that Plaintiff and the Class would be responsible for Defendants' attorneys' fees – which were not recoverable under Ohio law – Defendants violated the CSPA.

76. As a direct and proximate result of Defendants' violation of the CSPA, Plaintiff and the members of the class have suffered harm, including but not limited to statutory damages, damages associated with any amounts paid to Defendants' for their attorneys' fees, and emotional distress.

**WHEREFORE**, Plaintiff, individually and on behalf of all other similarly situated members of the class, request that the Court grant the following relief against Defendants:

1. Certification of this matter as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, and prompt issuance of notice pursuant to Fed. R. Civ. P.

23(c)(2) apprising all members of the Rule 23 Class of the pendency of this action and permitting them to assert their claims in a timely manner;

2. Designation of Plaintiff as the Representative of the Class;

3. Designation of undersigned counsel as Class Counsel;

4. All compensatory, monetary, and statutory relief available as a result of Defendants' FDCPA violations;

5. All compensatory, monetary, and statutory relief available as a result of Defendants' CSPA violations;

6. Attorneys' fees, expenses, and costs in this action; and

7. Such further relief as this Court deems just and proper.

Respectfully submitted,

*David C. Harman*
David C. Harman (87882)
**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE P.C.**
201 E. Fifth St., Suite 1340
Tel: (513) 852-5600
Fax: (513) 852-5611
Email: dharman@burgsimpson.com

and

Matthew Miller-Novak (0091402)
**BARRON PECK**
**BENNIE & SCHLEMMER CO. LPA**
3074 Madison Road
Cincinnati, OH  45209
Tel.  (513) 721-1350
Fax (513) 721-5029
Email:  mmn@bpbslaw.com

Attorneys for Plaintiff and the Class

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues which can be so tried

>/s/ David C. Harman
>David C. Harman